The final case of the morning will be number 22-10611 Charles Baldwin v. Express Oil Change, LLC. Let's wait just a minute for everybody to get ready. May it please the court, Jeffrey Schwartz on behalf of Express Oil Change, LLC. On page 34 of Judge Totenberg's decision in order granting a preliminary injunction, she held, and I quote, The restrictions that apply to Baldwin for a period of four years are presumptively unreasonable. This is clear error. Such a threshold error that it in effect becomes the fruit of the poisonous tree for all that follows. As I will explain, she was mandated to abide by the statutory language that affords a five-year rebuttable presumption in connection with a sale of an equity interest that occurred in this case. And to see why, all we need to do is look at the statutory language itself from the Georgia Restrictive Covenant Act. Let's start with the definitional terms in 13-851 of the Georgia Annotated Code. 13-851-7 defines an executive employee. And that definition includes terms like key employee, manager, or even a supervisor of employees. Mr. Baldwin, as the record reflects, was referred to as a manager of managers. He was the top person over a number of stores, and so he clearly is an executive employee under the statutory language. And I don't even think he disputes that. That can turn to 13-851-17, which defines a seller. And seller is in quotes. A seller includes an executive employee who receives, at a minimum, consideration in connection with a sale. So looking at these two provisions, we have Mr. Baldwin as an executive employee, and we have Mr. Baldwin as a seller, because he did receive consideration. Even Judge Totenberg concluded as much. No, she just assumed he was a seller. She didn't decide it. She said, I'll assume he was a seller. She didn't analyze it. Apologies, Your Honor. What I was saying is that Judge Totenberg held that he did receive consideration. Yes, that was a disputed issue, did he have consideration. But she said she ruled on that, but she never ruled on the whole thing about whether he was a seller. Am I reading that wrong? No, you're absolutely right. That's one of her threshold errors. That she assumed, for purposes of the rest of her analysis, that he was a seller. Not really. It's not clear, because as she put it herself, what she was trying to embark on was a better read of the statute, as opposed to actually applying the statute itself, which is the thrust of my argument. Because if we follow just the strict statutory language, Mr. Baldwin was an executive employee, and he was a seller. My point was, in terms of the definition of seller requires that you receive consideration, Judge Totenberg did conclude he received consideration. So under the straightforward statutory language, he's an executive employee, and consequently, he's a seller. So then we move to Georgia Code 13-857, which delineates different aspects of what constitutes a sale, and what occurs outside of the employee-employee relationship, and therefore is viewed as a restrictive covenant ancillary to a sale of a business. In fact, the court refers to these as being associated with the sale of ownership, and lists these five different items. For our purposes, we look at 13-857b-5, which lists among the items the sale of an equity, interest, or profit participation. As such, based on the statute, a sale of an equity, interest, or profit participation falls outside of the presumptions that are applicable to the employee-employee relationship. We next turn to 13-857. I'm not sure what you're getting at, sir. Can you explain that? Sure. The whole thrust of the decision by the court below was that this somehow was a restrictive covenant between an employer and employee, and that's why the judge found that it was a two-year presumption that should apply. What I'm articulating, or at least trying to articulate, is that based upon the way the statute reads, you cannot have a restrictive covenant between an employer and employee when the restrictive covenant is predicated on the sale of an equity, interest, which then creates the five-year presumption. And that's in 13-857b-5, which establishes that a court, and it doesn't use permissive language, that a court shall presume that a restriction sought against a seller of all or a material part of an equity, interest, or profit participation is presumed to be reasonable in time for five years or less. So we have Mr. Baldwin, who under the statute was an executive employee, who under the statute was a seller, who sold his equity, interest to Express Oil. Those are not disputed facts, and they fit tightly within the statutory language. Let me just make sure I understand. So what, in your view, what does seller of all or material part of refer to? In his instance, his equity, interest. So he sold all of his equity, interest, 15%, to Express Oil Services. So it doesn't matter how large or small the equity, interest is. It just needs to be a material part of that, whatever it is. If it was an all, then the issue would be was it a material part. Here we don't even get the material part. He sold all of his equity, interest. And is it about the material part of his interest or about a material part of the business? My understanding was the latter. There would be no reason for it to be the latter because the statute delineates this particular circumstance, which was part of what the legislature was trying to do, which bind people like Mr. Baldwin to a restrictive covenant that can go for as long as five years when you're receiving upwards of $2 million in ancillary to a sale. The statute doesn't say or. It lists each of the various five items, and equity, interest, and participation of profit are one of those items, and that's what he sold. I don't understand how you're making the connection of material to a material part of his ownership interest versus a material part of the entire business. I mean, let's say that he instead of having 15% of the business had 0.5% of the business, and he sold 100% of his 0.5%. I don't think that that would actually—certainly that's not a material part of the business, and I don't see why the legislature would have had that in mind rather than a part of the business. I don't think that's an accurate reading. We do respect your honor of the statute. Tell me where you're looking. 13-857. Where—13-857-D, okay? And you have to read that within the context of the entire statute itself. So the statute begins in A, and it says, In determining the reasonableness and time of a restrictive covenant sought to be enforced after a term of employment, a court shall apply the rebuttal presumptions provided in this code section. So that's the first part of this provision addressing the employer-employee relationship. Then it goes in B. In the case of a restrictive covenant sought to be enforced against a former employee and not associated with the sale or ownership or all or a material part of, and then it has five, an equity, interest, or profit participation or any other type in a business, professional practice, or other commercial enterprise. So you have one, which is the assets of a business, two, the shares of a corporation, three, a partner interest, four, a limited liability company membership, and then after four you have the or, so you have the disjunctive here. So five stands alone. If you're selling all or material part of your equity, interest, or profit participation, then you are bound by a restrictive covenant ancillary to a sale of a business as contrasted with the employer-employee relationship. It can't be read any other way. And then if you go down into 13A57D, which kind of just repeats everything that we just went over, that's where the five-year presumption is mandated. So what we have here is really just a straightforward statutory construction issue. I don't really think this hurts you, so we probably don't need to get into it, but I don't see why you wouldn't read five in a similar manner to one through four. I mean, either way, I think you have a good argument that a 15% stake in a business is material. So I'm not totally sure it matters, but I just don't really understand why five would be completely different in kind than one through four. I'm sorry, Judge Green. I'm not really understanding the distinction you're trying to draw. Well, it doesn't matter, like I said. Okay. Can I switch gears a little bit and go back to Seller? I'm sure you have an answer for it, but I got stuck in Seller throughout all of this because—and I want to make sure I have the facts right. As I understand the case, he worked for—what's the name of that company? Verity. What was his charge of the day? There were a number of different— He didn't work for 138 Investments. Well, that's where his equity ownership was. All right. I'm talking about who he's an executive employee of. What was the name of the company? I have it here. The employer that we purchased is where he was an executive employee. But even with the perspective— Let me go back. I thought he worked for Velocity Ventures. He was an employee of Velocity Ventures. Unquestionably. But he was also— Wait a minute. I don't—just tell me. Hold up. So he's employed by them. He was the senior vice president of operations there. And his salary was paid by Velocity Ventures, right? Right. Correct. And that's where he was an executive employee. That's right. He did—forget about the Phantom Equity business. Under this agreement he has with them for the Phantom Equity. But he didn't own—Fuller and Lamb owned 138 Investments. Correct, Your Honor. Thank you. He didn't work for 138 Investments. That's correct. And that 138 Investments was a partnership, LLP. Is that right? Also correct. And so—but that—I don't know if it was Fuller or Lamb or the LLP. They've entered into an agreement with him. They gave him this Phantom Equity, right? That's correct. You worked for this company over here, which does a lot of work. I guess Velocity had a contract with 138 Investments or something. Velocity ran 138 Investments. Okay. So you worked for this company over here. And if you meet these goals, if that company sells, okay, we're going to give you this Phantom interest. He was not a shareholder in 138, right? I believe that's correct. He had no ownership interest, right? I believe that's correct. He had—I mean, he couldn't stop the sale. He wasn't a party. He didn't sign the purchase and asset agreement. He was not a party to the sale. Correct also. Okay. So here's my question. When you go to Seller, it says Seller is an executive employee of the business who received consideration and connection with the sale of the business. Yeah, he received consideration of the sale of that business, but I don't see how he's an executive employee of the business that was sold. As I understand it, Velocity Ventures was never sold. I'm not sure that that's in the record. It's not at the basis of your claim that he—as to his non-compete. He's an executive employee. Of who? Executive employee of 138 that was sold. Even if it was 138, he'd still be considered an executive employee because of his role with Velocity Ventures. So he— I'm going to the definition of Seller. See, to me, this whole thing has gotten—it's confusing because I don't think the statute's addressing this situation. I mean, you assume the entity sold. The guy works at the entity. And so we're not going to let you get around this and that. If you're an executive, you can have four years. But here, this is such a strange animal. He's really—doesn't even work for that company. He has no ownership interest in the company. He's an executive employee, but he's not an executive employee. Right. So let's look at this again. No, I'm looking at the language. Executive employee of the business. And it's connection—it has to be a connection in sale with the business. Look at 13-8-51-17. I'm sure you know it well. I'm looking at it right now. You're right. And so I'm just doing plain language. Executive employee of the business who receives consideration in connection with the sale. The sale means of the business, right? With a sale, correct. Not the sale, a sale. There was only a sale of the business. That's right. And he got consideration for that. But is he an executive—it says a seller is an executive employee of the business. He's not an executive employee of this business. That was all. See, it's such a—he works for these people over here. He doesn't really own anything in this business. Although I think the statute's trying to capture executive employees of a business. You know, the business that they're actually running. But it just doesn't fit here to me. He's not a seller. I would stop at he's not a seller. Tell me why that's wrong. I think the record supports that he was. I think the record supports his critical role in the overall operations of Mr. Lamb and Mr. Fuller. He managed 18 of their stores. He was a critical part—such a critical part of the sale that my client engaged him thereafter and paid him $250,000 a year. They recognized the value he gave. They gave him a premium for the sale of the business. I got that. He was an employee working for whatever. They want him to stay with Velocity. And so you need to stay with Velocity if it's running Velocity. Okay. He went on with Express Oil after the sale. Wait, I got that part. And then he said, no, I'm not going to do that. We understand the facts. How is he an employee of the business that was sold? Maybe that's not fair. Yeah, I think the record supports that the whole kit and caboodle was sold. The elements of the sale that was made, the entities that conveyed to Express Oil— I think we have the purchase and asset agreement. It doesn't mention Velocity Ventures at all. Right, but he wasn't an innocent bystander for 138. The man was a critical operator within the overall corporate structure. I got your argument. Thank you, and I appreciate the panel's indulgence. I recognize that my rebuttal time has expired. I'm sure she'll give it to you. I'll give it back to you. You're answering Judge Hall's question. Okay. All right. Thank you. I wouldn't do that to you. I appreciate that. Thank you. May it please the Court, my name is Ray Stanford. I represent the Apple Lady, Charles Baldwin, in this case. If there are no initial questions, I'll proceed with our prepared remarks. But if you do have initial questions, this is a complicated case. This case turns on whether or not Charles Baldwin was, one, a seller, two, of a material part, three, of the assets, or an executive employee, of the assets sold in the APA agreement. And all of those elements fall in our favor. We think the district court properly received this. I know that the court made a lot of effort to understand 13A57D, which was a section of the Georgia Restricted Covenant Act that distinguishes between employer-employee agreements in business, sell, purchase, or sell, and how it applies to temporal restrictions. That's what B is all about. I forgot who read the section, but it says in determining the reasonableness in time, so the time has to be reasonable. That's a completely different analysis. Court shall apply the rebuttal presumption provided in the following sections. There are four following sections. The first one deals with the employer-employee section, that's section B. C deals with franchisee, which is not really applicable in this case. Which section are you looking at? Section 13A57. Section A provides the initial framework. It says it applies a rebuttable presumption. And then B deals with employer-employee. C deals with franchisees, which really doesn't apply here. And D deals with the business of sell. Both B and C are framed in a way that if this restrictive covenant is intended to be asserted against, and then they identify the employer-employee context, and then the business in context. The language in B and D is the same. In B it says if the employee is not one of these, then there's a presumption of two years. Isn't the real question whether he was a seller? Sorry, I didn't hear you, Your Honor. Isn't the real question whether he was a seller? Because if he was, then five years is a presumptive limit, right? No, Your Honor. First of all, there's a question that we agree with Judge Hull's analysis. He was not a seller. I do find that interesting. Did you make the argument that Judge Hull raised in your brief? I'm sorry? Did you make the argument that Judge Hull raised in your brief? I still did not hear you. I couldn't hear you. This is not working. Can you hear me now? I can hear you. Did you make the argument that Judge Hull raised in your brief? I'm having a tough time. I would ask one of the other judges just to – I saw Judge Berger of the Supreme Court sitting next to another judge who couldn't speak, and Judge Berger had to explain what the judge next to him was saying. Let me try. She says, my concern about a seller. Did you make that argument in your opening brief before this court? Yes, we did. Yes, we did. I don't recall seeing that. Can you tell me which page you made that argument on? About the seller? I know you made arguments about the seller, but did you make the argument that Judge Hull raised that he wasn't actually – that he didn't qualify because he worked for – it was connected to the employee? I didn't make that argument, Sean. We made it earlier. And Velocity Ventures was a separate company. It was not included in the asset purchase agreement. You made that argument? Yes. That was in the briefs that we submitted to the district court. But did you make that argument to us? No, we did not. The – I didn't make the argument about Velocity not being sold, but I know you made generally he's not a seller because you went through the consideration and all the factors, but did you argue he was not a seller because he was not an employee of the business that was sold? Did you make that argument? We said indirectly, and I'll answer my question, indirectly we made that argument because we also concluded that Mr. Baldwin was not included in the asset purchase agreement. He wasn't even addressed. And so the arguments that we make about the seller, it's based on two reasons. One is the statutory construction. The two, the parties did not intend Mr. Baldwin to be a seller in the asset purchase agreement. He wasn't even referenced in the asset purchase agreement. And we made a number of arguments to show that he specifically was not included in the asset purchase agreement, which actually raises, Judge Grant, did you have? Sure. The definition of seller includes an executive employee of the business who receives at a minimum consideration in connection with a sale. Why doesn't your client qualify as a seller under that definition? One, there's two parts. One is when we're talking about the assets, we're talking about the executive employee receiving consideration in sale. He was not an employee of any of the entities that Judge Hull said. I think you said you did not make that argument to us, right? Not in our brief, but we did in the motion for the district court, which are before the court. In terms of the parties' intent, if you look at the asset purchase agreement, if you look at the very introductory section, it identifies the parties to the asset purchase agreement. It literally excludes him. You go through each of the items in the introductory section, which identifies the parties. It talks about, first of all, the items are redacted, and the fact that they're redacted, and the defendants refused to give an unredacted copy to Mr. Baldwin, both at the time they required that he sign this, without even seeing what he allegedly was supposed to sign, and two, when they finally provided a redacted copy, it doesn't include the identities of the parties in the number of sections in the asset purchase agreement. In their arguments, when they respond to Mr. Baldwin as a part of the asset purchase agreement, they still have refused to provide an unredacted copy of the asset purchase agreement. I don't see why that's relevant. It separates ambiguities, and if there is an ambiguity, then the construction would be construed against the drafter. But an ambiguity with respect to what? With respect to whether he received consideration at a minimum from the sale or about something else? Or whether he was even included in the sale. He got money there, right? That's another problem, and this is something we argued at different times. If you look at what Mr. Baldwin signed, which we referred to as the covenant agreement, I think the district court referred to it as the restricted covenant. If you look at the covenant agreement, it lists and makes reference to the APA. It doesn't say that he received money under the APA. It just simply says this APA would not have been sold but for Mr. Baldwin's signing of this covenant agreement. You're not arguing that he didn't receive money, are you? Well, we would argue. Actually, the agreement says, the APA says, the monies in that asset purchase agreement, and it's an asset purchase agreement, didn't buy the companies, didn't buy the equity interests of the companies. And we did make that argument. The asset purchase agreement dealing solely with assets was only sold to these individuals, Adam Fuller, Darrell Lamb, and the three companies for which he was not an employee. We think it's three companies. One was the 138 investment. That's the one that's listed in the asset purchase agreement. The other two companies have been redacted. We think that's Knoxville Express and so forth. I'm asking a very specific question. Did your client receive money out of this deal? Your Honor, I'm hesitating because I don't want to misstate, and I understand your question. Mr. Baldwin had an arrangement with the people that owned 138, Knoxville Express, and Mid-Georgia Investments to receive a percentage of monies received by Mr. Royal, Mr. Lamb, and Darrell, the other owner. He had a right to receive monies upon the sale of those three companies. That's about it. He was employed by Velocity as functioned per se. The sale was made not to Mr. Baldwin. It was made to the owners of 138 and so forth. They, in turn, had a contractual obligation to Mr. Baldwin to pay him the monies of the phantom stock. So, yes, he received money. He received money, is his question. But it wasn't because of the asset purchase. It was because of the owners of 138 and so forth. They received money from a sale, not because of the asset purchase. The asset purchase was between ELC and a number of other companies and 138 and so forth. And Mr. Love and the owners of 138, they're the ones that received the money. But it was as a result. He would not have received that money but for the sale. That's true, Your Honor. That is correct. What's your response to your opponent's argument that in Section 13857D, when we're looking at whether it was a material part, we don't look at whether it was the assets of the business, but a material part of an equity interest or profit participation in a business. Why does that not apply to Mr. Baldwin? Did he receive? Let's assume he's a seller, and I realize there's a question about that. Let's assume he's a seller. Did he sell all or a material part of Subsection 5, an equity interest or profit participation in a business? And if not, why not? In our brief, we addressed that in three different ways. One is we looked for the meaning of material part in Georgia case law. We found very little information about that. Then we looked at the definitional sections in different blackstick hearings and so forth about the definition of material part. And we concluded that material part meant, this is our composite understanding of that, what it meant was material part influence or affect the merits or determination of the cause. Okay, but he sold, if he's a seller, he sold all of his equity interest or profit participation in the business, right? Not under the asset purchase agreement. That's what's so awkward about this. He had no bargaining power to approve anything. He didn't know about this until on a Saturday morning, telling him that two days later they were going to close a multi-million dollar deal. It goes well beyond the companies that Mr. Baldwin oversaw. And then on Monday, you either take it or leave it. And he said, this is my social security, and I didn't want to have it signed. But the asset purchase agreement does not require that Mr. Baldwin do anything. I think this is my opinion. I think the facts suggest that people screwed up. This was a major transactional undertaking that had been going on for a period of time. And for whatever reason, somebody realized, hey, we want this guy to sign a restricted covenant. They call him on a Friday. He shows up on a Saturday. They tell him, you've got to sign this. Can we see what I'm supposed to sign? Sure, here it is. You need to help us. All those facts don't matter. We have to look at the statutory language. Okay, not whether they coerced him by saying a coercion or anything. We have to go to the language. So can you go back to why it's not a material part? Sure, I'm sorry. Sure. I mean, we know what happened and how it occurred last minute. The documents are redacted. But what we're having to do is apply a statute here to determine whether a reasonable resumption of four years or two years apply. If you look at the ‑‑ I'll summarize this this way. Okay. In our ‑‑ in the APA agreement itself, if you look at the introductory language, who are the parties to the APA and so forth, we submit that it clearly was not Mr. Baldwin. So our first argument is he wasn't even part of the agreement, so he didn't sell anything. He certainly couldn't sell a material part if he didn't sell anything. But if somehow the court concluded that he was a seller in the APA, which we disagree with strongly, then did he sell a material part? The APA consisted of a ton of different businesses that were being sold by Mr. ‑‑ the owners of those three companies, as well as other companies. Mr. Baldwin did not have any relationship. He did not have any responsibilities at all with any of the other companies. The second ‑‑ the third thing that we argue, that he had no authority to say yes or no over anything. He had no bargaining power whatsoever, which goes to Judge Stotenberg's discussion about the ancillary to employment contract, ancillary to a business contract. And there are courts, there are cases recently that have held that if you look at whether there's an employment ‑‑ if you look at whether a contract should be analyzed as an employment contract versus a business contract, you look at the bargaining authority of the individual. And I believe Judge Stotenberg said, we have two contracts here. We've got a restrictive covenant contract that he signed. And then we have an employment ‑‑ I mean, asset purchase agreement that he did not sign and was not even included. And Judge Stotenberg was properly said, is this going to be construed as an employer‑employee contract, which has a presumptively two‑year restriction, temporal restrictions, or are we going to say that this is a business sale? And she concluded, among other indicia, that he had no bargaining authority whatsoever in this asset purchase agreement. So she ‑‑ I have a question related to that about 17B, the definition of seller. An executive employee of the business who receives at a minimum consideration in connection with a sale. Wouldn't you say, even if he didn't sign the agreement himself, didn't he receive money in connection with the sale? If you look at ‑‑ you're referring to ‑‑ 13851. 13, which ‑‑ I'm sorry, which? 13851.17. The definition of a seller. That is a definition of a seller. We agree with that. We agree with that. He got consideration in connection with the sale. You can't really argue otherwise. Well, I ‑‑ we're paid to do that. But I agree with Your Honor. The section that Judge Grant was addressing was the definition of a seller, which we agree with. Of a sale, 13857 dealt with a seller. And whether or not that seller would be subject to a five‑year or a two‑year, just because they're a seller doesn't mean that you've got a presumption of a two‑year or a five‑year. They still have to be included in the material part. But you ask whether or not he received consideration in connection with the sale. I don't see how you could connect his execution of the restrictive covenant with an agreement that he had nothing to do with, was specifically excluded. The asset purchase agreement, it identified the individuals who would receive the monies under the asset purchase agreement, and Mr. Baldwin was not one of those individuals and was not connected in any way with this one. So you think he needs to have received consideration legally, specifically as a legal term of art, in connection with the actual sale, as opposed to more kind of related to the sale. You think that he needed to be on the documents of the sale and receive consideration in that way. Is that what you're saying? Am I saying because he wasn't on that APA agreement and he's not part of it? Is that what you're asking? Right. I agree if he's not included in the agreement, he can't be part of the agreement. You're saying he's attenuated from his disemployment agreement he's got over here. But you piqued my curiosity, and I look at both the AP or APA. It does have two other companies here, and then on the Exhibit A, I guess he worked in Athens, or he covered Athens and Conyers. Were those his territories? Those are his job functions under Velocity. That's correct. Okay. But, see, I'm just picking up on this. This asset deal, it goes to maybe 15% of 138 investments, but there are two other business entities here. And was his agreement to – and I don't really see – I didn't copy his agreement. His agreement's in the record, right? It is, Your Honor. Is it Phantom Equity and only 138, or is it Phantom Equity and two other entities? He had Phantom Equity and one, maybe two, but there were no documents that covered that. Well, what was the other one he had? Well, it would have been the Georgia Middle Investment. Georgia what? Georgia Middle Investments. And the other one is 138 Investments. But the asset purchase agreement that was provided to us only identifies 138 investments. Yeah, it's got 238. If we're going to look at material part, 15% of 138 may not be very much, but two other businesses would be involved. There's another problem with his definition of material part. A controlling entity under the Restrictive Covenant Act, a party, says you've got to have at least 25%. And I don't have a specific document in the asset purchase agreement, but it also makes reference to primary owners. Because the way the asset purchase agreement was structured, there were three entities that were parties from the seller side. 138, and we don't know what the other two were. But then there are also primary owners of those three entities, and those were the individuals that we talked about, Mr. Love and I forget the name of the other individual. They were included as primary owners, and the asset purchase agreement identifies a primary owner as someone with a controlling interest. And Mr. Baldwin did not have a controlling interest at all. And the asset purchase agreement only dealt with those three entities, whatever the other two were that were redacted, and the primary owners. If you have the asset purchase agreement in front of you, I'd be happy to walk through that. Do you have any other questions? I think we understand your argument. Thank you very much. Thank you very much. Before we start your three minutes, can you tell me who were the other sellers besides 138? He says there's two corporations. Do you think Knoxville Express maybe is one of them? Who are these other two? Candidly, I don't know. Okay. But there are two other businesses being sold. 138 has so many franchises. And then you look at Zibit. There's a whole bunch of other stores. A whole bunch of other franchises that are being sold. That's correct. But he has nothing to do with it. That's possible. I don't think it matters. I understand that. But we're trying to see if he's a seller under this. Okay. And material part, don't we have to know to decide material part what was actually sold here? I don't believe you do. He may actually have 1% of the whole deal. I don't think it matters, Your Honor. I got 15% of these two. He sold all of his equity interest. That's in the restrictive covenant itself. You don't need to even get into material part. All of his equity interest into what? In 138. But you do know, is the district court got in the record what all this redacted? Is there a document? They have been unredacted? It does not. There. And we're here on appeal of a preliminary injunction. So the record has not been fully developed. So we're appealing the granting of a preliminary injunction. Okay. And so has she had a hearing on the permanent injunction or no? No. Our notice of appeals stopped that process. But if I may, let me go back to our discussion about the definition of executive employee. Because I had the benefit of refreshing my memory a bit with the record. Executive employee means a member of the board of directors. We're not contending that. An officer. Not contending that. A key employee? Yes. A manager. Or a supervisor of an employer. Okay. A supervisor of an employer. If you look at Judge Totenberg's decision, on page six, where she goes through the facts. Working for the employer? Doesn't say that. A supervisor of an employer doesn't say you have to be employed. We developed a pretty full record at the preliminary injunction hearing about what Mr. Baldwin did and didn't do. And Judge Totenberg found Baldwin continued to perform his regional manager functions until March 2021, when EOC purchased all of Kohler and Lamb's assets. He continued to perform his regional manager functions. He was a manager and he was a supervisor. So you have met the definition of executive employee. Therefore, he's a seller. Period. I'd also like to... Tell me what the definition of executive employee is. I think I have the statute. That's 1358... I'm just speaking for myself. He's still got to be an executive employee of the business that's being sold. You don't disagree he has to be an executive employee of the business that's being sold. That part, I think, could be subject to interpretation. But I think it doesn't matter ultimately because he was... But what is your position here? Does he have to be... You're now telling me he's not an executive... I mean, he is an executive employee because it's broader than the definition I was thinking. But does he have to be an executive employee of the business that's being sold? I don't know we need to even get there. My answer to that would be probably not because that's not what the statute says. He was a manager of the company that was sold. That we know. Go back to executive employee. The definition is 1358. What? 517. 517. Okay. The other... I want to make sure I get this in before my time collapses because I want to make it clear what we're asking this court to do. One, we're asking that you reverse the grant of the preliminary injunction. And I recognize this is a difficult procedural posture that we're in. The second thing that we would ask is that you remand with instructions that the district court apply the presumption of reasonableness of the four-year term. And three, in the interest of judicial economy, we ask as part of your remand that you instruct the district court that as the record currently stands, that that presumption is not rebutted. Happy to answer any additional questions from the panel. Thank you. Thank you. Court is in recess until 9 a.m. tomorrow morning. All rise.